ROTHSCHILD BROS. & CO. *v.* UNITED STATES (No. 908).[1]

BUTTON FORMS NOT FIT FOR BUTTONS EXCLUSIVELY.
Reviewing the history of the legislation of paragraph 426, tariff act of 1909, relating to button forms, it is clear that the clause, "and not exceeding three inches in any one dimension," governs by exclusion this importation, concededly as this is nine-inch strips in chief value of cotton cloth. The goods are not fit for buttons exclusively and accordingly could not be properly assessed as so fit; they were rightly assessed as a manufacture of cotton under paragraph 332, tariff act of 1909.

United States Court of Customs Appeals, November 27, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7349 (T. D. 32418).

[Affirmed.]

*Curie, Smith & Maxwell* (*Thomas M. Lane* of counsel) for appellants.
*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel; *Thomas J. Doherty*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

Appeal from a decision of the Board of General Appraisers construing paragraph 426 of the tariff act of 1909, which relates solely to materials used in the making of buttons.

The importation consisted of such materials in chief value of cotton in strips about 9 inches long and 3 inches or less in width. Each strip consisted of several patterns woven in the piece, concededly no one thereof over 3 inches in any dimension, with an indicated line for the

---
[1] Reported in T. D. 33002 (23 Treas. Dec., 512).

subsequent cutting apart of each such pattern, which in every case must be done before being fed into the button-making machine.

The collector assessed the importation as "manufactures of cotton" under the provisions of paragraph 332 of the tariff act of 1909.

The importers, who are appellants here, maintained that assessment should be made under paragraph 426 of the act, which provides for certain materials used exclusively for making buttons. The controversy is determined by the construction placed upon the latter paragraph, for, concededly, if the articles are excluded therefrom by its language they are dutiable as assessed. Paragraph 426 reads (italics are ours):

426. Button forms of lastings, mohair or silk cloth, or other manufactures of cloth, woven or made in patterns of such size, shape or form as to be fit for buttons exclusively, *and not exceeding three inches in any one dimension*, ten per centum ad valorem.

The contention literally and legally is, Are the words "and not exceeding three inches in any one dimension" related back to the immediate antecedent "patterns" only, or are they related back to all the subjects of the provision, "button forms of lastings," "mohair or silk cloth," and "other manufactures of cloth"?

In immediate application to the importation the question is, Do these words apply to the concededly 9-inch strips of such materials here imported, or only to the individual patterns therein making up the strips, which patterns are concededly less than 3 inches in every dimension?

We think substantial aid is had in the ascertainment of the congressional purpose by an examination of the history of the provision and the causes leading up to its enactment.

So far as we are able to ascertain, the provision had its inception in the tariff act of July 30, 1846 (Tariff Acts 1789–1909, p. 147), in language as follows:

*Schedule H.*—(Five per centum ad valorem.) * * * Lastings suitable for shoes, boots, bootees, or buttons, *exclusively;* * * * manufactures of mohair cloth, silk twist, or other manufactures of cloth suitable for the manufacture of shoes, boots, bootees, or buttons, *exclusively;* * * *.

The provision next appeared as modified in the tariff act of July 14, 1862, duty rated at 10 per cent ad valorem (Tariff Acts 1789–1909, p. 211), as follows:

Sec. 6. * * * Lastings, mohair cloth, silk, twist, or other manufacture of cloth, woven or made in patterns of such size, shape, and form, *or cut in such manner as to be fit for shoes, slippers, boots, bootees, gaiters, and buttons exclusively*, not combined with india rubber; * * *.

The tariff act of June 30, 1864, reenacted this provision, *in haec verba*, except that the rate 10 per cent was added to the immediate paragraph. (Tariff Acts 1789–1909, p. 237.)

March 29, 1867, Congress adopted the following resolution:

SEC. 2. *And be it further resolved,* That the joint resolution of March second, eighteen hundred and sixty-seven, to amend section five of an act entitled "An act to increase the duties on imports and for other purposes," approved June thirtieth, eighteen hundred and sixty-four, shall not be construed to apply to lastings, mohair cloth, silk, twist, or other manufactures of cloth woven or made in patterns of such size, shape, and form, *or cut in such manner as to be fit for buttons exclusively.* (Tariff Acts 1789–1909, p. 263.)

The tariff act of February 8, 1875, and March 3, 1883, enacted this provision in the following words:

On lastings, mohair cloth, silk twist, or other manufactures of cloth, woven or made in patterns of such size, shape, or form, *or cut in such manner as to be fit for buttons exclusively,* ten per centum ad valorem. (Tariff Acts, 1789–1909, pp. 303 and 339.)

The tariff acts of 1890 (par. 428), 1894 (par. 315), and 1897 (par. 413) (Tariff Acts, 1789–1909, pp. 403, 491, and 586) enacted the provision precisely in the same words in each act, as follows:

*Buttons and button forms:*
Button forms: Lastings, mohair, cloth, silk, or other manufactures of cloth, woven or made in patterns of such size, shape, or form, *or cut in such manner as to be fit for buttons exclusively,* ten per centum ad valorem.

Then followed the tariff act of 1909, identical in language with the foregoing, save the words "button forms of lastings," etc., are substituted for "Button forms: Lastings," etc., and the words "*or cut in such manner*" are omitted and substituted therefor, *in the exact relative position in the paragraph,* are the words "*and* not exceeding three inches in any one dimension."

These recitals make obvious to demonstration the constant and consistent purposes of Congress in this legislation.

It has been the purpose of Congress since 1846 to admit certain defined button materials at an exceptionally low rate of duty. The rate from 1862 to date has uniformly been 10 per cent on materials exclusively used for such, which, when used for other purposes, have uniformly borne rates of duty many times greater. Undoubtedly Congress was actuated by the purpose of upbuilding the button industry of this country by affording its raw materials an exceptionally low rate of duty. While, however, Congress maintained this consistent purpose, the progress of its legislation to effect such witnesses a determination to, first, continue that policy by continuing the description of the goods affected at the same rate of duty; and, secondly, to so legislate as to prevent its abuse by such materials being imported for other uses.

To accomplish the latter purpose Congress first enacted that the merchandise should be "used exclusively for buttons," leaving that determination to administration. This safeguard was deemed sufficient by the Congress in the tariff acts of 1846, 1862, 1864, the resolution of 1867, and down to the tariff act of February 8, 1875.

Actuated by the same purpose, undoubtedly, and convinced of the inefficiency of the provision against abuse, Congress in the latter act inserted the additional safeguard, "*or* cut in such manner as to be fit for buttons exclusively," which provision was maintained in identical words in the tariff acts of 1875, 1883, 1890, 1894, and 1897. In the enactment of the law of 1909, as stated, there was substituted for that provision, in exact relation to the paragraph, the words "*and* not exceeding three inches in any one dimension."

That this change was occasioned by the necessity of a more complete or stringent provision, substituting the mandate of law for the caprice or judgment of administrative officers, is shown very clearly by the recorded controversies over the terms and application of this provision of law. Thus in T. D. 3084, decided in 1877, the word "exclusively" was invoked. In T. D. 9176, decided in 1888, whether or not certain goods were "cut in such manner as to be fit for buttons exclusively" by being punctured with holes at certain spaces, was an issue. In 1888, in T. D. 9176; in 1890, G. A. 220 (T. D. 10570); in 1892, G. A. 1209 (T. D. 12525), the application of the same clause was decided.

All these cases bear official and authoritative witness that the administrative controversies arising under this section of the law concerned alone, first, the doubtful application of the word "exclusively," then of the words "cut in such manner as to be fit for buttons exclusively," and at the same time make certain the purpose of Congress extending over a period of more than 60 years in reenacting this provision, changing mainly that part the subject of these controversies. Congress was searching for language to make fraud less likely, to make administration more safe, and to prevent *all* importations of goods named in and imported under this paragraph at this exceptionally low rate of duty from being imported for other uses than for the making of buttons.

All intendments gathered from the history of and afforded by the grammatical and legal construction of the paragraph conduce to the one conclusion.

First. The corresponding substitute language of this provision, the word "exclusively" in the acts of 1846, 1862, 1864, and the resolution of 1867, unquestionably related back to all the materials afforded this low rate of duty and the subject of the paragraph. The corresponding substitute language in the acts of 1875, 1883, 1890, 1894, and 1897 likewise was without doubt predicated of all the materials covered by the paragraph. When, therefore, Congress in pursuit of an obvious and consistent policy of over half a century made one further effort in the same direction by *substituting* other words *in the same relative position in the paragraph* it must have intended the same relation to the subject matter of the paragraph.

Second. Every administrative construction placed upon the predecessor phrases of these words related them to the whole antecedent subject matter and Congress legislated in view of that administration, substituting these words in the same relative position in the paragraph, thereby adopting that construction legislatively.

Third. The provision is in effect an exemption affording a low rate of duty to goods otherwise paying a high rate, the particular provision being one of the safeguards against fraud. There seems no just reason for imputing to Congress a purpose to surround one class only of these goods thus exempted and exposed to fraud with such a safeguard and denying the others this legislative safeguard.

Fourth. There is no significance in the change of language from "button forms: Lastings," etc., in the acts of 1890, 1894, and 1897 to "button forms of lastings," etc., in the act of 1909.

That was a change of typographical arrangement only. The previous acts had divided dutiable articles into subdivisions and this was that of "Buttons and button forms," followed for purposes of segregation only by the subhead "button forms". The same arrangement obtained in the act of 1909 as it passed the House, but disappeared coincident with the dropping of subdivisions as the bill was reported to the Senate. This change, therefore, evidences no intent on the part of Congress to change the subject matter of the paragraphs or their predication of what follows, but is immediately attributable to the necessity in following a new typographical arrangement of the law.

Fifth. The dual precaution in the separation of this clause by both a comma and the conjunction "and" from the immediate antecedent phrase, when, were it the intent that it should be predicated of that phrase alone, the precise result should have been unquestionably attained by omitting both therefrom by all rules of grammar, rhetoric, and law indicates a purpose on the part of Congress to so far divorce the relations between these two phrases as to defeat such exclusive reference and affect the reference contended for by the Government.

Sixth. The appellant's contention reads the words of the paragraph, "and not exceeding three inches in any one dimension" as an alternative provision with "woven or made in patterns." That construction would have been possible under previous tariff acts, the substitute words being preceded by "or," though the contrary interpretation was given by all authorities for over 50 years. The Congress, however, dropped the alternative "or" and substituted the conjunctive "and" in the act of 1909. To give this phrase, therefore, an alternative application with the words "woven or made in patterns" wholly disregards the express conjunctive language of the Congress.

Seventh. The legislative history of the paragraph evidences the congressional purpose to substitute statutory requirements in the place of administrative determination. The construction contended for would in practice and substantial effect read out of the act this statutory requirement and substitute therefor the administrative decision of numerous collectors at different ports.

We think the decision of the Board of General Appraisers should be *affirmed*.

------

BARBER, Judge (specially concurring):

I concur specially in the affirmance upon the ground that the Board of General Appraisers found in effect that the importers had failed to show that the merchandise was fit only for making buttons. I think this finding, when the testimony and the exhibits are considered together, is clearly warranted, and determines the case.